THE STATE, EX REL. HAMMOND, *v.* PUBLIC EMPLOYEES RETIREMENT SYSTEM.

(No. 71-449—Decided March 15, 1972.)

*Messrs. Kellar, Blair & Kunkel,* for relator.

*Mr. William J. Brown,* attorney general, and *Mr. George P. Parthemos,* for respondent.

*Per Curiam.* The only issue is whether respondent is under a duty specially enjoined by law to continue the monthly payment to a trustee of the property under the foregoing circumstances.

Relator contends that, in the absence of proof of death, he, as trustee, is entitled to receive the monthly payments; that the burden of showing proof of death is upon respondent; and that a presumption of death in the case of an unexplained absence for seven or more years does not arise until the date of the court decree authorized by R. C. 2121.04, a section of the Presumed Decedents' Act.

Relator urges also that the right to the retirement payment is vested by virtue of R. C. 145.561, which reads as follows:

"The granting of a retirement allowance, annuity, pension, or other benefit to any retirant or beneficiary pursuant to action of the Public Employees Retirement Board vests a right in such person, so long as he remains

the recipient of any benefit of the funds established by Section 145.23 of the Revised Code, to receive such retirement allowance, annuity, pension, or other benefit at the rate fixed at the time of granting such retirement allowance, annuity, pension, or other benefit. Such right shall also be vested with equal effect in the recipient of a grant heretofore made from any of the funds named in Section 145.23 of the Revised Code.''

Respondent argues that where the evidence shows that a person was last seen in a state of imminent peril, an inference of immediate death may be drawn. Relator views the evidence submitted otherwise, to the effect that Miss Hammond was not in imminent peril, being an experienced hiker, and that in such a case the inference does not arise. In view of our disposition of the matter, we need not evaluate the merits of this issue.

Neither do we find R. C. 145.561 controlling, as it purports to guarantee only that a recipient will continue to receive his annuity at the *rate* fixed at the time such annuity was granted.

The rights of a public employee to a retirement annuity are derived from R. C. Chapter 145. We have found no authority, and relator has set forth none, requiring respondent to continue making monthly payments to a trustee where a retirant has disappeared and has not thereafter been heard from. In the event she reappears, respondent must then make current her payments.

Marjorie Hammond's right to receive payments from the respondent is a personal right, continuing only during her actual lifetime. Although for certain purposes, the Presumed Decedents' Act provides that the ''presumption of death shall be regarded as having arisen as of the date of such decree'' (R. C. 2121.04), such ''presumption'' does not prove the existence of *actual* life prior to the decree, so as to enable a third person to receive property through or on behalf of the ''missing'' person. See *Baker* v. *Myers* (1953), 160 Ohio St. 376.

Where, as in *Baker*, the right of a party to recover is

predicated on whether a person is *actually* alive at a particular time or times, the burden of proof is upon the party so claiming. (Paragraph one of syllabus of *Baker* v. *Myers, supra.*)

For mandamus to issue, in this case, relator must show a right, clear and free from doubt, as well as a duty specially enjoined by law to make retirement payments to a trustee of the missing retirant. *State, ex rel. Szekely,* v. *Indus. Comm.* (1968), 15 Ohio St. 2d 237, and *State, ex rel. Spellmire,* v. *Kauer* (1962), 173 Ohio St. 279. As we find that relator has failed to satisfy these requirements, the writ is denied.

*Writ denied.*

O'NEILL, C. J., CORRIGAN, STERN, LEACH and BROWN, JJ., concur.

SCHNEIDER and HERBERT, JJ., dissent.

HERBERT, J., dissenting. As a result of the decision by the majority in this case, Marjorie Hammond will be deprived of at least the investment potential of thousands of dollars, due to her under her contract with the Public Employees Retirement System at the rate of $262.37 per month and payable until her death. Furthermore, this deprivation will be effected without notice and hearing, in a totally *ex parte* proceeding, conducted by a person or persons not clearly empowered to do so.

In 1966, Marjorie Hammond was isued a Certificate of Retirement by the respondent P. E. R. S. It provided that she was to receive "an annuity to be paid throughout [her] life only and terminating at [her] death with no further payment * * *." The payments under the plan were made until July of 1970, when Miss Hammond apparently disappeared. At that time, the annuity payments were stopped by the P. E. R. S. upon its *assumption* that Miss Hammond was no longer entitled to them, despite a total absence of statutory authority for that obligor to take such action. The insurmountable fact remains that,

legally, Marjorie Hammond is not now, and has not been, dead.

Retirant's brother, as her court appointed "trustee for absentee" under R. C. 2119.01 *et seq.*, stands ready and legally obligated to accept and manage the payments for her, *under court supervision,* and, in my opinion, the P. E. R. S. is under the clear duty to either continue the payments it agreed to make during Marjorie Hammond's lifetime or establish the termination of that lifetime in an adversary legal proceeding. This is in keeping with our prior observation that statutes of this general nature are to be liberally construed, *State, ex rel. Hanrahan,* v. *Zupnik* (1954), 161 Ohio St. 43, 48, 117 N. E. 2d 689, and certainly should not be interpreted adversely to the interests of the very people they were designed to protect. This is particularly so where, as in the case at bar, the employee was *required* to participate in the retirement system.

Additionally, there seems to be no question that membership in the Public Employees Retirement System constitutes "a contract between the member and the system, into which was incorporated the legislation creating and regulating the insurance." *Jenkins* v. *Public Employees Retirement System* (1961), 87 Ohio Law Abs. 42, 45, 176 N. E. 2d 164. See, also, *State, ex rel. McLean,* v. *Retirement Board* (1954), 161 Ohio St. 327, 119 N. E. 2d 70. Also, public employees have a vested interest in retirement benefits to be paid them from contributory funds. *State, ex rel. Preston,* v. *Ferguson* (1960), 170 Ohio St. 450, 166 N. E. 2d 365; R. C. 145.561. I cannot subscribe to the majority's suggestion that such interests as these may be taken away without some type of adversary procedural safeguards. In light of the fact that the same P. E. R. S. administrators may be called upon both to protect the fund and rule upon disbursements from it, such procedures would appear to be especially valuable.

The majority opinion cites *Baker* v. *Myers, supra* (160 Ohio St. 376), for the propositions that the Presumed Decedents' Act does not prove the existence of actual life

and that when the right to recover is "predicated on whether a person is actually alive * * * the burden of proof is upon the party so claiming." I need not quarrel with those conclusions, because the case at bar involves a far different situation than we faced in *Baker.* In that case, the right to a share of a decedent's estate hinged upon whether the potential heir had survived the decedent. In other words, survivorship was a condition precedent to the establishment of a right to share in an estate. Marjorie Hammond's right to a share of the fund was established long ago. The burden of proof is not upon her to show that she lives in order to continue receiving what is already hers. The burden to prove her death is upon the entity which seeks to avoid its existing obligation.

In the case of Marjorie Hammond, the ending of the annuity payments apparently will not cause physical hardship. The record discloses no dependents who relied upon her for food, clothing or shelter. However, in future cases, where there are such dependents, the majority's decision in this case could well precipitate cruel and unwarranted consequences. While the majority states, as the sheerest of *dictum,* that the respondent "must then make current" this retirant's payments "in the event she reappears," what will be done, upon such reappearance, to compensate for the lapsed insurance policies,* foreclosed mortgages and judgment liens likely to occur in other cases of this nature?

The writ prayed for should be allowed and the guidance needed by the multi-billion dollar retirement systems of this state should be carefully provided in a full majority opinion.

SCHNEIDER, J., concurs in the foregoing dissenting opinion.

---

*Respondent itself, in this case, casts doubt upon the efficacy of its own *ex parte* determination of death by continuing to pay the instant retirant's medical insurance premiums. Subsequent to the announcement of the majority opinion, it would appear likely that such self-doubts will vanish, along with the insurance premium payments.