GUZIAK, Appellee,

v.

GUZIAK, Appellant.

[Cite as *Guziak v. Guziak* (1992), 80 Ohio App.3d 805.]

Court of Appeals of Ohio,
Summit County.

No. 15323.

Decided July 29, 1992.

806

*Richard Kutuchief,* for appellee.

*George Miller,* for appellant.

REECE, Judge.

Defendant-appellant, Stanley A. Guziak, appeals from the decision of the Summit County Court of Common Pleas, Domestic Relations Division, granting plaintiff-appellee, Veronica A. Guziak, a decree of divorce, ordering the division of marital property, and awarding appellee spousal support.

The parties were married in Pennsylvania on April 7, 1956, but resided in Ohio throughout their marriage. They have five children, all of whom were emancipated when this action was commenced. During their marriage Stanley was employed by the Ohio Department of Transportation. He retired in 1984 and receives pension benefits from the Public Employees Retirement System ("PERS"). Veronica, not having completed high school, never pursued a career. Early in the marriage she remained at home to raise the children, finding employment in the dry cleaning business once the children were in school.

Besides some savings and miscellaneous assets the Guziaks owned, free and clear, the marital residence located in Stow, Ohio. As a result of his mother's death in 1984, Stanley received substantial assets from both her probate estate and jointly held certificates of deposit. Among the property received from the estate was the deed to the M.G. Motel ("Motel") which is located in Uniontown, Pennsylvania. In dividing the marital property the court awarded Veronica the marital residence and furnishings, her automobile and $25,904 in liquid assets. Stanley was awarded the Motel, his automobile and $37,872 in liquid assets. The court also ordered that Stanley's monthly PERS benefits be split equally between them. Absent the PERS benefits, a value of $136,904 was placed on Veronica's share of the marital assets. Stanley's share was valued by the court at $120,272.

Veronica originally filed her complaint in divorce on September 17, 1988. In February 1990 she amended the complaint to allege that she and Stanley had lived separate and apart for more than one year. R.C. 3105.17(A)(9). A two-day trial was held in May 1991. Stanley appeals from the resulting divorce decree, raising eleven assignments of error which will be rearranged where appropriate.

### Assignment of Error No. I

"The trial court erred in finding the M.G. Motel to be an inherited asset but including it as an asset of the marriage for purposes of division of property."

■ The division of property incident to a divorce is governed by R.C. 3105.171. Under this statute the court is required to distinguish between the "marital property" of the couple and the "separate property" of each spouse.

In fashioning a property division the court starts from the premise that marital property should be divided equally between the parties, with each spouse receiving his or her own separate property. R.C. 3105.171(C) and (D). See *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 20 O.O.3d 318, 421 N.E.2d 1293, paragraph one of the syllabus. Separate property specifically includes any inheritance received by one spouse during the course of the marriage. R.C. 3105.171(A)(6)(a)(i).

Given the prescripts of the statute, Stanley contends that it was incongruous of the court to acknowledge in the divorce decree that he inherited the Motel, and yet consider it a marital asset in the property division. While conceding that the court may make a distributive award to one spouse of the other spouse's separate property, he argues that the court may not simply reclassify and thereby convert separate property into marital property. While we agree with this statement of the law, the issue is whether, under the facts of this case, the court erred in considering the Motel a marital asset. At trial Stanley was questioned at length about his prior testimony in the probate proceedings of his mother's estate. We find the following portions of his testimony to be of particular relevance.

"[By Mr. Kutuchief] Q. Mr. Guziak was this question asked and this answer given? * * *

" 'Did you have a business relationship with your mother?'

"Answer by Mr. Guziak: 'Yes, I did.'

"Question: 'How long did this business relationship go on?'

"Answer: 'Since 1946.'

"Question: 'Could you outline for the court what that relationship was?'

"Answer: 'Well, I had also worked with my mother even when I was under 18, but when I became 18 years of age in 1946, the business was put in my name and I filed income tax.'

"Question: 'What business are [you] talking about?'

"Answer: 'At the time, we owned a little gas station, grocery and eventually, over a period in 1983 [*sic*], we went into the bar business, into the motel business, and we had also owned another separate bar.'

" * * *

"Q. Mr. Guziak, were those questions asked and those answers given?

"A. Yes, sir.

" * * *

"Q. * * * Was this question and answer given:

" * * *

"Question: 'During the period of time, were you still active or working with your mother in the businesses you have described?'

"Answer: 'Yes, very active.'

"Question: 'And what were you doing?'

"Answer: 'Well, essentially, for the majority of the period of time I spent virtually all of my vacation time in the business and for quite a few years it was a rare weekend that I did not return from Ohio to Pennsylvania to help with the business.'

"Question: 'What active part were you doing?'

"Answer: 'On the weekends I did physical work in the business—whatever business we were in which was maybe bartending. I did virtually all of the maintenance in the place. I helped with the new constructions as we did it. Because of my mother's limited ability with the English language, I prepared every income tax form—prepared and signed them. I prepared W–2 forms when necessary, the 941 Social Security forms for employees, and everything else[.] I participated in every business decision that my mother ever made.'

"Did you give that testimony?

"A. Yes, sir.

" * * *

"Q. Well was this question asked and this answer given, Mr. Guziak: 'During that period of time did you have a systematic plan [of] investment with your mother?'

"Answer: 'Yes.'

"Question: 'And would you relate to the court what that plan was?'

"Answer: 'Well, I contributed every year some of my own money from my own wages or whatever source of income I had. I was paid and did file W–2 forms and reported on my income tax income from the business, and I also received expenses from the business for traveling back and forth and I essentially invested all of those in our joint certificates, and we rolled over every cent of interest we had in it essentially for thirty-six or thirty-seven odd years.' "

Contrary to Stanley's contention that his only involvement with the Motel was "as a loving son who was going to assist his mother," this testimony reflects that he and his mother also had a business relationship closely resembling a partnership. The court in *Kuehn v. Kuehn* (1988), 55 Ohio App.3d 245, 564 N.E.2d 97, was confronted with a similar situation. In *Kuehn* the husband, during the marriage, received from his mother a gift of

nine shares of stock in a closely held corporation. These shares gave the husband a controlling interest in the business. While the analysis of the court focused on the transmutation of separate property into marital assets, the equities of the circumstances were of paramount concern. *Id.* at 246–247, 564 N.E.2d at 99. The appellate court found that the husband had "freely utilized corporate assets for personal, family, and household matters." *Id.* at 247, 564 N.E.2d at 100. Therefore, the equities of the case required that the nine shares be considered marital property. *Id.*

Similarly, the testimony in this case demonstrates that the Guziaks, throughout their marriage, made substantial contributions to the Motel as a family asset. They spent their weekends and vacations in Pennsylvania assisting in the operation of the Motel. Besides Stanley's efforts, as evidenced by his testimony, Veronica stated that she did laundry, cleaned rooms and performed other housekeeping functions at the Motel. Under R.C. 3105.171(A)(3)(a)(iii), marital property includes "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of *either spouse or both spouses* that occurred during the marriage." (Emphasis added.)

It is fundamental that in a domestic relations action the court is given broad discretion to fashion a decree that is equitable upon the facts and circumstances of each case. *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83, 86; *Teeter v. Teeter* (1985), 18 Ohio St.3d 76, 18 OBR 106, 479 N.E.2d 890. The judgment of the court will not be disturbed on appeal unless found to be "unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142. Based on the particular circumstances of this case we find no abuse by the court in considering the Motel, although inherited by Stanley, to be a marital asset.

This assignment of error is overruled.

## Assignment of Error No. II

"The trial court erred in equally dividing the appellant's pension, which he presently receives, without taking into account any tax considerations."

Pursuant to R.C. 3105.171(A)(3)(a)(ii), the court considered Stanley's PERS pension to be a marital asset. As part of the property division, the decree ordered that Veronica "shall be entitled to one half of the monthly pension." Stanley contends the court erred in failing to specify whether the parties are to divide the gross amount of the pension or the net amount, after taxes. He argues that if the intent of the court was to divide the pension before the deduction of taxes, then the court erred in failing to apportion his tax liability.

In the valuation of the marital assets the court listed the PERS pension at $2,076 per month, which is the before-tax amount. As this is the only reference in the decree to the value of the pension benefits, the intent of the court was that the parties divide this amount.

The next issue is whether the court erred in failing to apportion the federal and state income taxes Stanley must pay on his pension benefits. In response to this assignment of error Veronica asserts that each party will pay taxes on their respective share of the pension. However, she fails to consider the complexity of the Internal Revenue Code, Title 26, U.S.Code.

Under Section 71, Title 26, U.S.Code, a taxpayer's "gross income includes amounts received as alimony or separate maintenance payments." In the corresponding Section 215, Title 26, U.S.Code, the payor spouse is permitted to deduct such payments from his gross income. To qualify the payments must be made "in cash," and "received by (or on behalf of) a spouse under a divorce or separation agreement." Section 71(b)(1)(A), Title 26, U.S.Code. More importantly the right to receive the payments must terminate upon the death of the payee spouse. Section 71(b)(1)(D), Title 26, U.S.Code. Even though the payments may be classified by the court as a property settlement, such a designation will be of no consequence so long as these conditions are present. See *Phinney v. Mauk* (C.A.5, 1969), 411 F.2d 1196, 1198; *Bardwell v. Commr. of Internal Revenue* (C.A.10, 1963), 318 F.2d 786, 789.

In determining whether payments are part of a property settlement, as opposed to alimony, as defined by Section 71, Title 26, U.S.Code, the courts have looked to such factors as:

" * * * (1) [T]he presence of a fixed sum, (2) the fact that the payments are not related to the husband's income, (3) the continuation of the payments without regard to the remarriage or death of the wife, (4) the fact that the wife relinquished property interests in return for the payments, and (5) the fact that the husband's obligation to make the payments is secured." *Riley v. Commr. of Internal Revenue* (C.A.10, 1981), 649 F.2d 768, 772.

Of these factors the only issue not clearly addressed in the divorce decree is whether Veronica's interest in Stanley's pension terminates upon her death. For the following reasons we find that it does.

At trial evidence was given that Veronica is the designated beneficiary in Stanley's PERS pension. Should Stanley predecease her, Veronica will receive monthly payments from PERS equal to one half the amount Stanley would have received if he were alive. We note that the court referred only to the "monthly pension," never placing a total value on the pension benefits.

We find implicit in the divorce decree the court's intent that these same interests of the parties continue following their divorce.

 Additionally the right to receive PERS payments is a personal one, continuing only during the lifetime of the retiree. *State ex rel. Hammond v. Pub. Emp. Retirement Sys.* (1972), 29 Ohio St.2d 192, 194, 58 O.O.2d 403, 404, 280 N.E.2d 904, 905. We do not believe that the court intended to award Veronica greater rights in the PERS benefits than those of Stanley. As Stanley's right to receive PERS payments terminates upon his death, we find that the intent of the court was that Veronica's right to receive one half of the pension payments also terminates upon her death.

Accordingly, because her interest in the pension terminates at death, the payment to Veronica of one half of the gross amount of the pension qualifies as alimony under Section 71, Title 26, U.S.Code. Because Ohio income tax is based on the "adjusted gross income" as used in the Internal Revenue Code, Ohio income taxes will also be apportioned to each spouse. See R.C. 5747.-01(A) *et seq.*

Stanley's second assignment of error is overruled.

### Assignments of Error Nos. III and VII

"III. The trial court erred by dividing the entire pension, rather than the eighty-six percent (86%) acquired during the marriage."

"VII. The trial court erred by not considering the car and the savings account appellant had prior to the marriage as separate property and not allowing a set off when dividing the property."

Under these assignments of error Stanley argues that the court erred in failing to provide set-offs for separate property he brought into the marriage.

 R.C. 3105.171(C) and (D) requires only that the court start from the premise that marital property should be equally divided between the spouses, with each spouse receiving his or her own separate property. The court may make a distributive award of one spouse's separate property to "facilitate, effectuate, or *supplement* a division of marital property." (Emphasis added.) R.C. 3105.171(E)(1). When a distributive award is made the court "shall make written findings of fact that explain the factors that it considered in making its determination that the spouse's separate property should not be disbursed to that spouse." R.C. 3105.171(D). Subsection (F) lists eight factors, which are exemplary only, for the court to consider in deciding whether to make a distributive award. Two such factors are the duration of the marriage and the assets of the parties.

■ In the case *sub judice* the court considered such factors. The court, while acknowledging that Stanley entered the marriage with four years of PERS service, found this to be of minimal value. While these four years represent 12.5 percent of Stanley's thirty-two years of service in PERS, the monetary contribution made in these years, prior to 1956, were minimal in comparison to the later years. Similarly the court found the impact of the automobile and the $5,000 in savings Stanley brought into the marriage thirty-five years ago to be inconsequential. Specifically the court noted that the duration of the marriage necessitated an equitable division of property. Equitable doesn't imply equal. *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 96, 518 N.E.2d 1197, 1200. Such a purpose of adequately providing for Veronica's maintenance, who at fifty-nine years of age has limited employment skills, is not unreasonable. In determining an equitable division of property and whether a distributive award is necessary, R.C. 3105.171 permits the court, after considering the enumerated factors, broad discretion in fashioning an equitable property settlement. In reviewing such an award we will not disturb the judgment of the trial court absent a clear abuse of that discretion. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028, 1030. We find no such abuse here.

These assignments of error are therefore overruled.

### Assignment of Error No. IX

"The trial court erred by not considering the appellee's future social security benefits when dividing the property."

■ As to the failure of the court to consider Veronica's future social security benefits as a marital asset, we take note of the almost total absence of any evidence concerning this issue. The only testimony given was that of Veronica, wherein she stated she will be eligible for social security benefits at the appropriate age. She estimated that her benefits would be about $350 per month.

Additionally, we note that Stanley was ordered to pay spousal support in the amount of $200 per month for sixty consecutive months and up to $300 per month toward Veronica's medical insurance. At fifty-nine years of age, Veronica will become eligible for social security benefits at approximately the same time the $200 per month in spousal support terminates. She will also be eligible for Medicare which may reduce the amount Stanley must pay for supplemental medical insurance under the decree.

Given the lack of evidence concerning Veronica's social security, and the fact that these benefits begin about the same time that her spousal support

terminates, we find no error by the trial court in failing to specifically address social security as a marital asset in its decree.

This assignment of error is without merit.

### Assignments of Error Nos. IV and V

"IV. The trial court erred and abused its discretion to the prejudice of appellant by granting appellee spousal support in light of the facts that she was fully employed at the time of trial and receives over one half of the marital assets under the court order.

"V. The trial court acted in an arbitrary, unreasonable, and capricious manner by ordering appellant to also pay up to three hundred dollars ($300) a month as additional spousal support for appellee's medical insurance in addition to granting appellee over one half the assets and ordering appellant to pay two hundred dollars ($200) per month spousal support."

Stanley complains that the court erred in awarding Veronica spousal support in the amount of $200 per month for sixty months and up to $300 per month for medical insurance.

The facts show that throughout their thirty-five-year marriage Veronica stayed at home to raise the children. Only as the children became older did she begin working in the dry cleaning business. Veronica never completed high school and at fifty-nine years of age she has limited skills and suffers from degenerative arthritis. By contrast Stanley reported approximately $14,000 in interest and dividend income in both 1989 and 1990. He also testified that he receives $5,000 per year in rental income from the Motel. If the marriage had continued Veronica would have been covered under Stanley's medical insurance through PERS. Following their separation in 1988 Veronica had to resume working in the dry cleaning business, at times working two jobs. Her employment provides her with neither medical insurance nor retirement benefits.

As Stanley points out in his assignments of error, our standard of review is an abuse-of-discretion standard. The court's judgment states that its decision is based on these facts and the factors as listed in R.C. 3105.18 for awarding spousal support. Under such circumstances the court enjoys a strong presumption that it has reviewed such factors in reaching its decision. We find no abuse of discretion here and decline to disturb the judgment based on these claimed errors. *Kaechele, supra,* 35 Ohio St.3d at 94, 518 N.E.2d at 1199; *Booth, supra,* 44 Ohio St.3d at 144, 541 N.E.2d at 1030.

These assignments of error are overruled.

### Assignment of Error No. VI

"The trial court erred and abused its discretion in ordering appellant to pay seven thousand dollars ($7,000) as additional spousal support for attorney fees."

■ It is well established that a court may grant reasonable attorney fees as part of an award of spousal support. Such an award will not be disturbed on appeal absent a showing of a clear abuse of discretion by the court. *Birath v. Birath* (1988), 53 Ohio App.3d 31, 39, 558 N.E.2d 63, 71; *Ranz v. Ranz* (1988), 51 Ohio App.3d 66, 69, 554 N.E.2d 142, 146.

In determining the reasonableness of the attorney fees, the court must consider the factors set forth in DR 2–106(B). See *Swanson v. Swanson* (1976), 48 Ohio App.2d 85, 91, 2 O.O.3d 65, 69, 355 N.E.2d 894, 898. Of particular significance is DR 2–106(B)(4), which requires an attorney, when fixing fees, to consider "[t]he amount involved and the results obtained" in the case.

■ In the present case Veronica requested $20,000 in attorney fees. The court found this amount to be excessive, awarding $7,000 as "an equitable sum." Given the complexity and duration of this case, along with the extensive discovery that was required, this sum is not unreasonable. We therefore will not disturb this award.

### Assignments of Error Nos. VIII, X and XI

"VIII. The trial court erred by considering the 1990 Oldsmobile Cutlass to be an asset of the marriage since it was purchased after the divorce action was filed with non-marital funds."

"X. The trial court erred by not specifying what constitutes the outstanding debts of the marriage, since the parties had lived apart for almost three years when the trial was held.

"XI. The judge committed prejudicial error by continually advising the parties that if they didn't move the case along they would never get a decision."

■ These three assignments of error are without merit. In our search of the record we find nothing indicating that the 1990 Oldsmobile was purchased by Stanley with his separate funds. The only testimony concerned the purchase itself. Testimony was given that Stanley controlled the family finances, transferring funds after the parties separated. We find sufficient credible evidence supporting the court's finding that the automobile was purchased with marital assets and was therefore marital property.

 As to the issue of marital debts we note that Veronica testified that there were no marital debts. Nowhere did Stanley raise the issue of marital debts. While the court may have needlessly used this boilerplate language in the decree, we find no prejudice to either party.

 Finally we find no prejudice in the court's prodding of the parties and their counsel to move this case along. After a thorough reading of the transcript we find that counsel for both parties were engaged in excessive rehashing of prior testimony and argumentative examinations of witnesses. Veronica's complaint alleged that they had lived separate and apart of over one year, R.C. 3105.17(A)(9), a claim unchallenged by Stanley. Therefore the court was concerned only with the division of property and whether to grant Veronica's request for spousal support. While the issues of the case should have been limited to these considerations, the parties repeatedly focused on each other's faults and character. Additionally, the examination of witnesses was repetitive. Under such circumstances the court must be allowed to bring the real issues of the case back into focus. We find that the trial judge did nothing more than this.

These assignments of error are overruled.

Having overruled all of appellant's assignments of error, the judgment of the trial court is affirmed in all respects.

*Judgment affirmed.*

CACIOPPO, P.J., and COOK, J., concur.