[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 173.]

THE STATE EX REL. SERVICE EMPLOYEES INTERNATIONAL UNION, DISTRICT 925, ET AL. *v.* STATE EMPLOYMENT RELATIONS BOARD ET AL.

[Cite as *State ex rel. Serv. Emp. Internatl. Union, Dist. 925 v. State Emp. Relations Bd.*, 1998-Ohio-463.]

*Mandamus to compel State Employment Relations Board to issue a complaint and conduct a hearing on University of Cincinnati's unions' unfair labor practice charge granted, when—Mandamus appropriate remedy to obtain judicial review of orders by SERB dismissing unfair labor practice charge for lack of probable cause.*

An action in mandamus is the appropriate remedy to obtain judicial review of orders by the State Employment Relations Board dismissing unfair labor practice charges for lack of probable cause.

(No. 97-630—Submitted October 21, 1997—Decided February 25, 1998.)

IN MANDAMUS.

_____

{¶ 1} This case arises as an original action in mandamus. Relators are the Service Employees International Union, District 925; International Union of Operating Engineers, Local 20; Ohio Nurses Association; and the University of Cincinnati House Staff Association.[1] Respondent is the State Employment Relations Board ("SERB"). The University of Cincinnati is an intervening respondent.

_____

1. On June 9, 1997, the University of Cincinnati House Staff Association's membership voted to dissolve the association. As a result, on October 3, 1997, SERB filed a motion to dismiss the House Staff Association from this action. On October 13, 1997, pursuant to Civ.R. 25(C), relators moved to substitute Dr. Suzanne Sumida et al. for the House Staff Association. By entry dated October 29, 1997, this court denied SERB's motion to dismiss and granted relators' motion for substitution of parties.

**{¶ 2}** On October 8, 1996, the University of Cincinnati, through its board of trustees, voted to privatize the University of Cincinnati Hospital. The trustees approved a long-term lease effective January 1, 1997, transferring all hospital property to University Hospital, Inc. ("UHI"), a private corporation created by the university. As a result of the privatization, on December 31, 1996, the university terminated the employment of all hospital employees. UHI offered to reemploy all such employees.

**{¶ 3}** Prior to the trustees' decision to privatize the hospital, relators and the university apparently were parties to collective bargaining agreements that had been entered into pursuant to R.C. Chapter 4117, Ohio's Public Employees' Collective Bargaining Statute. Specifically, the complaint alleges that Service Employees International Union, District 925, represented one hundred twenty-five university employees; International Union of Operating Engineers, Local 20, represented fifty university employees; Ohio Nurses Association represented nine hundred university employees; University of Cincinnati House Staff Association represented two hundred university employees.

**{¶ 4}** On September 26, 1996, in response to the university's plan to privatize hospital operations, relators and other labor organizations filed an unfair labor practice charge with SERB. Relators alleged a violation of R.C. 4117.11(A)(1) in that the university had committed an unfair labor practice when it proposed to "change its hospital operation to evade existing SERB jurisdiction and divest public employees of all their rights as public employees * * * [including] the right to recognition of employee organizations for their bargaining units, and the right to collective bargaining under [R.C. Chapter] 4117." A labor relations specialist for SERB conducted an investigation of the charge and recommended that SERB find probable cause to believe that an unfair labor practice had been committed.

2

**{¶ 5}** SERB's investigator based his recommendation on several factors, including an internal confidential memorandum authored by the university's Senior Vice President and Provost for Health Affairs that had introduced the concept of privatizing the hospital. According to the investigator's report, the confidential memorandum noted that union policies under the SERB system inhibit peaceful relations between management and employees. The investigator found that although the confidential memorandum listed other economic and financial reasons for privatization, the memorandum also indicated a belief that the labor atmosphere would be more desirable for the university under the National Labor Relations Board than under SERB jurisdiction. The investigator's report also mentioned the existence of several documents and studies recommending privatization. These materials indicated that certain state regulations with which the hospital had to comply were costly to the hospital's operation. The investigator noted that a work group that conducted these studies was headed by the author of the confidential memorandum. SERB's investigator also relied on a deposition, conducted in another cause of action, in which the university's general counsel reaffirmed that the university's desire to escape SERB jurisdiction was at least part of the reason for seeking privatization. In addition, SERB's investigator found that another key factor for privatization was that the hospital would no longer have to recognize the University of Cincinnati House Staff Association as a certified bargaining unit, since house staff unions, those representing doctors in residency, would not be entitled to recognition by the National Labor Relations Board. Accordingly, SERB's investigator concluded that the university's decision to privatize may have been based on a desire to remove hospital employees from their protected status under state law, which could constitute interference, restraint, or coercion of employees exercising rights guaranteed in R.C. Chapter 4117.

**{¶ 6}** On March 6, 1997, SERB, by a two-to-one vote, rejected the investigator's recommendation and found instead that the "[i]nformation gathered

during the investigation failed to support that the public employees were in any way interfered with, restrained, or coerced in the exercise of their statutory rights." Thus, SERB determined that no probable cause existed to believe that the university had committed an unfair labor practice in the privatization of the hospital and therefore dismissed relators' charge. Minutes of SERB's meeting at which it dismissed relators' unfair labor practice charge indicate that board member Mason agreed with the investigator's recommendation that there was probable cause to believe that an unfair labor practice had occurred. Mason stated during the meeting that the investigation had produced sufficient evidence that the university, in privatizing the hospital, had attempted to evade SERB's jurisdiction and divest public employees of their statutory rights guaranteed under R.C. Chapter 4117. Conversely, Chairperson Pohler and Vice Chairperson McGee disagreed with the investigator's recommendation and determined that probable cause did not exist to find that the university had committed an unfair labor practice. Chairperson Pohler noted that she did not believe the university would privatize an entire hospital simply to remove the House Staff Association from SERB jurisdiction.

{¶ 7} On March 27, 1997, relators filed an original action in mandamus with this court challenging SERB's dismissal of relators' unfair labor practice charge. As relief, relators request that we issue a writ of mandamus compelling SERB to issue a complaint and conduct a hearing on the unfair labor practice charge.

—————————

*Kircher, Robinson, Newman & Welch* and *Robert B. Newman,* for relators.

*Betty D. Montgomery,* Attorney General, *Jeffrey S. Sutton,* State Solicitor, *Daniel P. Jones* and *Michael D. Allen,* Assistant Attorneys General, for respondent.

*Taft, Stettinius & Hollister, Henry C. Kasson* and *Gregory Parker Rogers,* for intervening respondent.

—————————

**DOUGLAS, J.**

4

**{¶ 8}** SERB dismissed relators' unfair labor practice charge upon a finding that there was no probable cause to believe that an unfair labor practice had been committed by the university in connection with the privatization of the hospital. Relators contend that SERB abused its discretion in this regard. Specifically, relators urge that SERB's determination of no probable cause was arbitrary and erroneous, since, according to relators, SERB was presented with evidence establishing probable cause that an unfair labor practice had been committed by the university. Therefore, relators claim that they are entitled to the issuance of a writ of mandamus to compel SERB to vacate the dismissal, issue a complaint, and hold a hearing concerning the unfair labor practice charge. For the reasons that follow, we grant the requested writ of mandamus and direct SERB to reinstate relators' unfair labor practice charge, issue a complaint, and conduct a hearing in accordance with R.C. 4117.12(B).

**{¶ 9}** For a writ of mandamus to issue, a relator must demonstrate that (1) the relator has a clear legal right to the relief prayed for, (2) respondent is under a corresponding clear legal duty to perform the requested acts, and (3) relator has no plain and adequate legal remedy. *State ex rel. Ohio Assn. of Pub. School Emp./AFSCME, AFL-CIO v. State Emp. Relations Bd*. (1992), 64 Ohio St.3d 149, 151, 593 N.E.2d 288, 290. A decision by SERB dismissing an unfair labor practice charge on the basis of no probable cause is subject to judicial review through an action in mandamus. See *State ex rel. Leigh v. State Emp. Relations Bd.* (1996), 76 Ohio St.3d 143, 666 N.E.2d 1128, and *State ex rel. Alben v. State Emp. Relations Bd*. (1996), 76 Ohio St.3d 133, 666 N.E.2d 1119.

**{¶ 10}** In *Ohio Assn. of Pub. School Emp., Chapter 643, AFSCME, AFL-CIO v. Dayton City School Dist. Bd. of Edn*. (1991), 59 Ohio St.3d 159, 572 N.E.2d 80, a majority of this court held that "[a] decision by the State Employment Relations Board whether or not to issue a complaint in an unfair labor practice case is not reviewable pursuant to R.C. Chapter 119 or R.C. 4117.02(M) and

4117.13(D)." *Id*. at syllabus. Therefore, given the holding of *Chapter 643, AFSCME,* it is clear that an order by SERB dismissing an unfair labor practice charge for lack of probable cause is not subject to judicial review by way of direct *appeal*. See, also, *Leigh,* 76 Ohio St.3d at 144, 666 N.E.2d at 1130, and *Alben,* 76 Ohio St.3d at 134, 666 N.E.2d at 1122 (both citing *Chapter 643, AFSCME* for the proposition that "[p]robable cause determinations by SERB under R.C. 4117.12[B] are not reviewable by direct appeal"). Because there is no right of direct appeal from SERB's final orders dismissing unfair labor practice charges on the basis of no probable cause, the third requirement for mandamus is clearly satisfied in the case at bar, in that relators have no adequate legal remedy to challenge SERB's final order dismissing their unfair labor practice charge.

{¶ 11} The remaining two requirements for the issuance of a writ of mandamus (legal right and legal duty) are also clearly satisfied in cases where, as here, SERB abuses its discretion in dismissing an unfair labor practice charge on the basis of no probable cause when, in fact, there clearly is probable cause to believe that an unfair labor practice occurred. R.C. 4117.12(B) provides that "[w]hen anyone files a charge with the board [SERB] alleging that an unfair labor practice has been committed, the board or its designated agent shall investigate the charge. *If the board has probable cause for believing that a violation has occurred, the board shall issue a complaint and shall conduct a hearing concerning the charge*." (Emphasis added.)

{¶ 12} R.C. 4117.12(B) mandates that SERB *shall* issue a complaint and *shall* conduct a hearing concerning an unfair labor practice charge if, following an investigation of the charge, it has probable cause to believe that an unfair labor practice has occurred. Thus, SERB has a clear legal duty to pursue an unfair labor practice case if it has probable cause to believe that an unfair labor practice has been committed. Additionally, the party that files the unfair labor practice charge with SERB has a clear legal right to have that charge proceed beyond the probable-

6

cause stage of the proceeding if, in fact, there is probable cause to believe that an unfair labor practice has occurred.

{¶ 13} Clearly, SERB has discretion in determining probable cause, but that discretion is not unlimited. This court has repeatedly held that where SERB issues an arbitrary or unreasonable final order which is not appealable, mandamus is an appropriate remedy to correct an abuse of discretion by SERB. See, *e.g.*, *State ex rel. Glass, Molders, Pottery, Plastics & Allied Workers Internatl. Union, Local 333, AFL-CIO, CLC v. State Emp. Relations Bd*. (1993), 66 Ohio St.3d 157, 159, 609 N.E.2d 1266, 1267 ("Mandamus is an appropriate remedy where no statutory right of appeal is provided to correct an abuse of discretion in administrative proceedings. * * * Because there was no direct right of appeal [from SERB's order denying an employee organization's request for recognition], mandamus was the appropriate remedy."); *Alben, supra*, 76 Ohio St.3d at 135, 666 N.E.2d at 1122 (holding that "mandamus is an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body like SERB"); and *Leigh, supra,* 76 Ohio St.3d at 145, 666 N.E.2d at 1130 (same principle). Thus, mandamus is available to correct an abuse of discretion by SERB in dismissing unfair labor practice charges. See, also, *State ex rel. Grady v. State Emp. Relations Bd*. (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343, 345, and *State ex rel. Ohio Assn. of Pub. School Emp./AFSCME, AFL-CIO*, 64 Ohio St.3d at 149, 593 N.E.2d at 288.

{¶ 14} Nevertheless, SERB argues that its only clear legal duty under R.C. 4117.12(B) is to investigate unfair labor practice charges. Thus, SERB apparently claims that as long as it conducts an investigation, SERB has no legal obligation to issue a complaint, regardless of the existence of probable cause. However, SERB's position on this issue is wholly inconsistent with the language of R.C. 4117.12(B), which mandates not only that SERB investigate unfair labor practice charges, but that SERB also issue a complaint and conduct a hearing concerning such charges

when there is probable cause to believe that unfair labor practices have occurred. Additionally, SERB's argument cannot be reconciled with a number of our prior decisions concerning the availability of mandamus to correct an abuse of discretion by SERB in dismissing unfair labor practice charges when there is no statutory right to appeal SERB's final determinations. Indeed, SERB's argument that it has no obligation to issue complaints in unfair labor practice cases as long as an investigation has been conducted underscores the importance of judicial review of SERB's final orders dismissing unfair labor practice charges. To grant SERB such unbridled power without some form of judicial review presents a clear potential for abuse of that power. Thus, we reject SERB's argument and dismiss, as thoroughly unfounded, any notion that SERB has the right to ignore its clear legal obligations under R.C. 4117.12(B).

{¶ 15} Accordingly, so that there is no misunderstanding, we now specifically hold that an action in mandamus is the appropriate remedy to obtain judicial review of orders by the State Employment Relations Board dismissing unfair labor practice charges for lack of probable cause. Encompassed within that holding is the irrefutable principle that SERB is under a clear legal duty to issue a complaint concerning an unfair labor practice charge when SERB's investigation of that charge reveals the existence of probable cause to believe that an unfair labor practice has been committed.

{¶ 16} This then leads us to the question of whether relators have demonstrated, by sufficient competent evidence, that SERB abused its discretion in dismissing the unfair labor practice charge alleged herein. An abuse of discretion implies an attitude that is unreasonable, arbitrary, or unconscionable.

{¶ 17} Relators' evidence consists of certain documents that indicate that the university's decision to privatize was in part motivated by antiunion animus toward SERB-certified bargaining units. For instance, the confidential memorandum previously referred to states that "[u]nion policies under the SERB

system in Ohio * * * inhibit peaceful management-employee relationships. * * * The Ohio Nursing Association contract is an example of the worst problems encountered. The 'bumping' requirements in the contract allow nurses who have worked in an ambulatory setting for more than 15 years to bump into operating rooms and intensive care units where knowledge of their technology has bypassed them by many years. The younger more highly skilled nurses and the newest techniques and technologies are bumped or choose to leave the system because they know they will be bumped. There is also a house staff union which has led to continuous conflict between administration and house staff. While privatization will not remove unions, it will permit them and the administration to operate under more favorable conditions with the NLRB than is presently possible with SERB." Also, in regard to the House Staff Union, the confidential memorandum states that "the house staff union would be voided, since NLRB does not permit House Staff Unions."

{¶ 18} SERB contends that reliance on this confidential memorandum is misplaced because there is no evidence that the trustees, who were ultimately responsible for the privatization, relied on the memorandum. However, the record before this court shows that the same antiunion animus is present in a document prepared by the trustees in response to questions concerning the privatization of the hospital. This document, written in a question-and-answer format, stated:

"[R]enegotiation [of hospital employees' benefits] will be much more difficult if the Hospital's employees are in the same bargaining units as other University employees.

"Separating out the Hospital employees will make it more likely that the Hospital can negotiate acceptable benefits agreements with the affected unions. It will also avoid a special problem posed by the Ohio Nurses Association, because under the applicable state law disputes with this union that are not resolved through negotiation must be settled by compulsory arbitration. Since arbitrators are

traditionally reluctant to reduce benefits levels, it is not likely that any agreement on a market-level benefits program could be reached with ONA as long as the state rules apply. The federal rules applicable if the reorganization takes place do not provide for compulsory arbitration, and thus are more likely than the state rules to encourage fruitful bargaining."

{¶ 19} It is apparent from the foregoing that, at a minimum, the decision of privatization was motivated in part by the university's intent to reduce the bargaining strength of the hospital bargaining units and eliminate SERB dispute-resolution procedures.

{¶ 20} Further, the record before this court reveals additional evidence indicating that SERB's determination of lack of probable cause was arbitrary and unreasonable. As mentioned earlier, the university's general counsel admitted in a sworn deposition that one of the reasons for the university's decision was that the privatization would enable the hospital to be free from state labor regulations.

{¶ 21} In *State Emp. Relations Bd. v. Adena Local School Dist. Bd. of Edn.* (1993), 66 Ohio St.3d 485, 613 N.E.2d 605, paragraph one of the syllabus, we held that "[t]he 'in part' test to determine the *motivation* of an employer charged with an unfair labor practice is mandated by R.C. Chapter 4117." (Emphasis added.) We further held that "[u]nder the 'in part' test to determine the actual motivation of an employer charged with an unfair labor practice, the proponent of the charge has the initial burden of showing that the action by the employer was taken to discriminate against the employee for the exercise of rights protected by R.C. Chapter 4117. Where the proponent meets this burden, a prima facie case is created which raises a presumption of antiunion animus. The employer is then given an opportunity to present evidence that its actions were the result of other conduct by the employee not related to protected activity, to rebut the presumption. The State Employment Relations Board then determines, by a preponderance of the evidence, whether an unfair labor practice has occurred." *Id.* at paragraph two of the syllabus.

In *Adena,* we also stated that "when a preponderance of the evidence supports a finding that an employer acted at least in part to discriminate against an employee for the exercise of protected rights, SERB's finding of a ULP is a reasonable interpretation of the statutory directive." *Id.* at 497, 613 N.E.2d at 614.

{¶ 22} Obviously, these concepts of shifting burdens and preponderance of the evidence contemplate consideration by SERB after a complaint is issued and a hearing is held on the unfair labor practice charge pursuant to R.C. 4117.12(B). Thus, at this stage, any discussion regarding preponderance of the evidence is premature. The pertinent issue is whether *probable cause exists* to believe that an unfair labor practice has occurred, not whether an unfair labor practice *actually* occurred. *Adena* clearly held that the "in part" test is mandated by R.C. Chapter 4117 to determine the *motivation* of an employer charged with an unfair labor practice. There is nothing in *Adena* that would preclude the use of the "in part" test at the probable cause stage of review. Therefore, applying the "in part" test, we find that the evidence clearly establishes the existence of probable cause indicating that the decision by the university to privatize the hospital was motivated, in part, by the university's desire to evade SERB jurisdiction and divest hospital employees of their statutory rights under R.C. Chapter 4117.

{¶ 23} SERB argues that *Adena* is not applicable to this cause of action on the basis that the employee in *Adena* "who was fired suffered a far more drastic change in his wages, hours, and other terms and conditions of employment than Relators' members." SERB appears to be arguing that where there are no substantial changes to the protected rights of employees, it is within SERB's discretion to determine that *Adena* is not applicable. We disagree. As previously noted, *Adena* held that the "in part" test is *mandated* by R.C. Chapter 4117 to determine the motivation of an employer charged with an unfair labor practice. There is nothing in *Adena* that excepts or limits the application of the "in part" test to only those instances when SERB determines that employees suffered *drastic* or

*substantial* changes to their rights protected under R.C. Chapter 4117. Assuming *arguendo* that SERB is correct and *Adena* may be inapplicable based on factual distinctions, we find inconceivable SERB's contention that relators' members did not lose any of their protected rights through privatization. The evidence in the case at bar shows that hospital employees' rights protected under R.C. Chapter 4117 were substantially affected. It is indisputable[2] that under NLRB jurisdiction the recognition of the House Staff Union would not be required, the Ohio Nurses Association would no longer be afforded the protection of R.C. 4117.14(D)(1), and hospital employees would be separated, for purposes of bargaining, from other university employees, thereby weakening their bargaining position. These rights, among others, are protected rights under R.C. Chapter 4117.

{¶ 24} Further, SERB contends that there is an exception implicit in R.C. Chapter 4117 that allows SERB to decline to issue a complaint despite probable cause to believe that an unfair labor practice had occurred as long as SERB deems its decision to be good labor policy for the benefit of the public. SERB is apparently suggesting that it has the right not to issue a complaint based on some amorphous, undetermined policy reasons even where SERB's investigation has revealed probable cause to believe that an unfair labor practice has occurred. This argument brings us full circle to the argument we have previously rejected. There is no such exception either expressed or implied in R.C. 4117.12(B). The statute is clear and unambiguous. If probable cause exists that an unfair labor practice has occurred, SERB must issue a complaint and hold a hearing. Were we to accept SERB's contention, the exception would swallow the rule we fashioned in *Alben* and *Leigh*, which holdings we reaffirm here today. This we decline to do.

---

2. See *St. Clare's Hosp. & Health Ctr.* (1977), 229 N.L.R.B. 1000, 1977 WL 8696; see, also, *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835.

{¶ 25} The university contends that its decision to privatize the hospital was based on economic and educational considerations. Relators do not contend that the university did not have other, perhaps legitimate, reasons for privatization, and this court is cognizant of the adverse conditions under which many health care providers currently operate. However, " '[a]nti-union animus is no less anti-union animus simply because it springs from serious economic considerations. Indeed, * * * in the majority of cases where employers commit unfair labor practices * * *, the employers break the law primarily out of concern for their economic welfare.'" *Calatrello v. Automatic Sprinkler Corp. of Am.* (C.A.6, 1995), 55 F.3d 208, 213, quoting *Natl. Labor Relations Bd. v. C.J.R. Transfer, Inc.* (C.A.6, 1991), 936 F.2d 279, 283.

{¶ 26} Finally, SERB and the university remind us of our holding in *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 533 N.E.2d 264, paragraph two of the syllabus, that this court must afford due deference to SERB's interpretation of R.C. Chapter 4117. However, deference should not be confused with subservience. When SERB has abused its discretion, as it has here, we cannot and will not shrink from our duty to so hold.

{¶ 27} Accordingly, we issue a writ of mandamus ordering SERB to issue a complaint and conduct a hearing on relators' unfair labor practice charge.

*Writ granted.*

RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**COOK, J., dissenting.**

{¶ 28} I respectfully dissent because I disagree with the majority's determination that SERB abused its discretion in finding that there was no probable cause for a hearing on relators' unfair labor practice charge. The majority improperly assails SERB's decision based on (1) a differing interpretation of the

policy aspects of R.C. Chapter 4117 and (2) a differing view of how SERB should have exercised its discretion with respect to issuing a complaint.

{¶ 29} The majority opinion, in essence, holds that any decision by a public employer to privatize is an unfair labor practice. It construes R.C. 4117.11(A)(1) as affording unionized state employees a statutory right to remain forever subject to Ohio collective bargaining law rather than to the National Labor Relations Act.

{¶ 30} SERB rejected this view. SERB's reasonable interpretation was that a change in corporate structure that thereby removed employees from the public sector was not the type of conduct prohibited by R.C. 4117.11(A)(1). "[C]ourts must defer to SERB's interpretation of R.C. Chapter 4117." *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183-184, 677 N.E.2d 343, 345. This court stated in *State Emp. Relations Bd. v. Miami Univ.* (1994), 71 Ohio St.3d 351, 353, 643 N.E.2d 1113, 1115-1116, that "[t]he General Assembly has entrusted SERB with the responsibility of administering the statute, and has bestowed upon it the special function of applying the statute's provisions to the complexities of Ohio's industrial life. In so doing, it has delegated to SERB the authority to make certain policy decisions. Our review is limited to whether SERB's policy is unreasonable or in conflict with the explicit language of R.C. Chapter 4117." The majority here may not, therefore, usurp SERB's policy function where SERB's interpretation is reasonable.

{¶ 31} SERB not only is to determine policy but also, by the statutory scheme, is accorded broad discretion, much like a prosecutor, in deciding whether to file complaints under R.C. 4117.12(B). With today's decision, the majority improperly substitutes its judgment for that discretion to be exercised by SERB.

{¶ 32} It can be reasonably inferred that, following a thorough investigation, the majority of the members of SERB concluded that where all unionized employees (except the house staff, who were ineligible because they are students) shifted to new collective bargaining units subject to the National Labor

Relations Board, there was no evidence of restraint, interference, or coercion of employees in the *exercise* of R.C. Chapter 4117 rights. This decision reflected SERB's reasonable interpretation of R.C. 4117.11(A)(1) and cannot be said to be clearly erroneous or arbitrary.

{¶ 33} The rationale of the majority misses the mark by analyzing *State Emp. Relations Bd. v. Adena Local School Dist. Bd. of Edn.* (1993), 66 Ohio St.3d 485, 613 N.E.2d 605, and its teachings concerning claims of antiunion *discrimination* under R.C. 4117.11(A)(3). Its analysis is inapposite to the R.C. 4117.11(A)(1) unfair labor practice charged in this case.

{¶ 34} As in all mandamus actions, relators have the burden of establishing a legal right, "clear and free from doubt," to the writ they seek. *State ex rel. Hammond v. Pub. Emp. Retirement Sys.* (1972), 29 Ohio St.2d 192, 195, 58 O.O.2d 403, 405, 280 N.E.2d 904, 906. That burden is increased by the hurdle here of showing that the discretionary decision of SERB, on a subject where SERB is vested with interpretive authority, is clearly erroneous and arbitrary. Relators did not carry these burdens, and thus the decision of SERB should stand.

{¶ 35} I would, therefore, deny the writ.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing dissenting opinion.

───────────────

**LUNDBERG STRATTON, J., dissenting.**

{¶ 36} I join in Justice Cook's dissent. In addition to the reasons raised by Justice Cook, I disagree with the majority's syllabus and supporting line of cases that find mandamus to be an appropriate remedy to obtain judicial review where no right of appeal exists. The majority renders meaningless the General Assembly's decision to grant the State Employment Relations Board ("SERB") final authority over the decision whether to issue a complaint. A mandamus action has been

simply substituted for an appeal. In reality, there is now a right of appeal for all SERB decisions by merely claiming an abuse of discretion.

{¶ 37} The majority concedes that there is no right of *direct* appeal. A legislative mandate making SERB the final authority in employment matters should not be the bootstrap basis for this court's finding that an action for mandamus lies because there is "no plain and adequate legal remedy." The plain and adequate *final* legal remedy is vested *in* SERB. We now judicially expand our powers of review to areas reserved to another branch of government to resolve. Therefore, I respectfully dissent.

MOYER, C.J., concurs in the foregoing dissenting opinion.

———————————