DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION.
{¶ 1} Relator, MARCA Education Association, OEA/NEA, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, State Employment Relations Board ("SERB"), to vacate its decision that found there was no probable cause to believe that the Marion County Board of Mental Retardation and Developmental Disabilities ("MRDD") committed an unfair labor practice and to issue a finding of probable cause followed by an administrative complaint on the charge.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided the requested writ of mandamus should be denied. Relator has filed objections to the magistrate's decision.
 {¶ 3} Relator initially objects to the magistrate's Finding of Fact No. 11; however, we find that the magistrate simply reworded the letter referred to in that finding of fact and the evidence as found by the magistrate is supported by the record. The balance of relator's objections argue that MRDD did not comply with the requirements of R.C. 4117. However, as the magistrate correctly found, in the Collective Bargaining Agreement, the parties provided for an alternate means of mediation and dispute resolution in lieu of R.C. 4117.14. Part of that agreement, as set forth in paragraph 8(B), was that the mediator would continue to act in such a capacity and mediation would continue until one or both parties decided otherwise. Here, the MRDD made its final offer and decided to end mediation. There was nothing in the agreement or the Ohio Revised Code that prohibited the employer from requesting that a response to its final offer be made directly to it and not through the mediator. Pursuant to the Collective Bargaining Agreement, there was no obligation on the part of MRDD to further continue negotiations and SERB did not abuse its discretion in finding no unfair labor practice occurred.
 {¶ 4} Upon a review of the magistrate's decision and an independent review of the record, this court adopts the magistrate's decision as its own. Relator's objections to the magistrate's decision are overruled, and the requested writ of mandamus is denied.
Objections overruled, writ of mandamus denied.
Brown and Watson, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. MARCA Education : Association, OEA/NEA, : Relator, : v. : No. 03AP-764 State Employment Relations Board, : (REGULAR CALENDAR) Respondent. :
 MAGISTRATE'S DECISION Rendered on January 27, 2004 IN MANDAMUS {¶ 5} Relator, MARCA Education Association, OEA/NEA (the "Association"), has filed this original action seeking a writ of mandamus compelling the State Employment Relations Board of Ohio ("SERB") to vacate its decision finding no probable cause to believe that Marion County Board of Mental Retardation and Developmental Disabilities ("MRDD") committed an unfair labor practice and to issue instead a finding of probable cause followed by an administrative complaint on the charge.
 Findings of Fact {¶ 6} 1. The Association is an "employee organization" under R.C. 4117.01(D), representing certain employees of MRDD.
 {¶ 7} 2. The Association and MRDD were parties to a collective bargaining agreement effective from January 1, 2000 to December 31, 2002. Under the agreement, the Association was the exclusive bargaining representative for the covered employees.
 {¶ 8} 3. In Article 8.B of the collective bargaining agreement, the parties agreed to procedures for alternative dispute resolution in lieu of the provisions in R.C. 4117.14:
In the event an agreement is not reached within sixty (60) days through negotiations after full consideration of proposals and counterproposals, either party may declare impasse on those issues yet unresolved. If impasse is declared, the parties will mutually request assistance from the Federal Mediation and Conciliation Service in the form of a Mediator. The Mediator shall act in such capacity until one or both parties decide otherwise, or until agreement is reached. The procedure is in lieu of provisions contained in Section 4117.14 of the Ohio Revised Code but does not waive the Association's right under4117.14(D)(2), subject to the condition that the Association shall not resort to a strike for a period of sixty (60) days after a notice to negotiate has been served or until the expiration of the collective bargaining agreement, whichever occurs later.
 {¶ 9} 4. On September 18, 2002, the Association served MRDD with notice that it wanted to negotiate a successor agreement, because the current collective bargaining agreement was due to expire at the end of the year. The Association filed a Notice to Negotiate a Successor Agreement on September 23, 2002.
 {¶ 10} 5. MRDD and the Association engaged in negotiations. However, on or about October 28, 2002, MRDD declared impasse, triggering the alternative dispute-resolution procedure in the collective bargaining agreement at Article 8.B.
 {¶ 11} 6. They requested a mediator, and one was assigned. On December 11, 2002, the parties engaged in a mediation session with the mediator's assistance.
 {¶ 12} 7. MRDD made an offer or offers during the session. At the end of the session, MRDD had an offer pending as to which the Association had not yet responded.
 {¶ 13} 8. On December 27, 2002, Robert Cross, representing MRDD, sent a letter to the Association requesting a response to the final offer MRDD had made during the mediation session. Mr. Cross noted that he had spoken to the mediator, who had no knowledge of an Association response to MRDD's final offer. Mr. Cross stated that, if he did not hear from the Association by January 6, 2003, with respect to MRDD's offer, he would recommend to MRDD that it implement the offer as made.
 {¶ 14} 9. The collective bargaining agreement expired on December 31, 2002.
 {¶ 15} 10. The Association contacted the mediator to request another mediation session to be scheduled within two weeks. On January 2, 2003, the Association wrote to MRDD that it was seeking to schedule another session with the mediator. The Association stated that MRDD's last offer had not been communicated as a "final" offer. Further, the Association stated that "ultimate impasse" had not been reached and that it wished to continue negotiating.
 {¶ 16} 11. On January 3, 2003, MRDD responded, asking why the Association could not respond one way or the other with respect to the pending offer. MRDD explained that it saw no purpose in having an additional meeting before the Association accepted or rejected the pending offer, unless the Association wanted further explanation of the financial situation, such as information regarding the budgeting to 2005 when MRDD would have to go back on the ballot for additional funding, or any other questions about MRDD's finances. MRDD explained that an additional explanatory meeting would not, however, change the pending offer. The letter further states: "I do not understand your difficulty in responding to a final offer. Is there another agenda at work here besides resolving the contract?"
 {¶ 17} 12. On January 15, 2003, MRDD notified the Association that, in the absence of a contract, and in the absence of a response to its offer, MRDD had voted to implement the offer made to the Association in the December 11, 2002 mediation.
 {¶ 18} 13. On January 22, 2003, the Association filed an unfair labor practice charge with SERB, alleging that MRDD had "refused to follow the dispute resolution procedures agreed to" and had, therefore, refused to bargain in good faith in violation of R.C. 4117.11(A). The Association further charged that the MRDD had violated R.C. 4117.11(A)(5) by implementing its last offer.
 {¶ 19} 14. SERB assigned an investigator, and, on January 31, 2003, SERB requested that the parties provide additional information. Both parties filed information pursuant to the request.
 {¶ 20} 15. In March 2003, an investigator submitted a memorandum to SERB including the following findings and discussion:
1. The Union is the SERB certified bargaining repre-sentative for the Employer's instructors. The parties' collective bargaining agreement expired December 31, 2002. The grievance-arbitration process is binding.
2. On September 23, 2002, the Union filed a Notice to Negotiate, 2002-MED-09-0899. The parties adopted their own dispute settlement procedure into Article 8(B) of their collective bargaining agreement, which is, in part, as follows:
If impasse is declared, the parties will mutually request assistance from the Federal Mediation and Conciliation Service in the form of a Mediator. The Mediator shall act in such capacity until one or both parties decide otherwise, or until agreement is reached. The procedure is in lieu of provisions contained in Section 4117.14 of the Ohio Revised Code.
3. On October 28, 2002, the Employer declared impasse, which triggered the above alternative dispute resolution procedure. The first mediation session was held December 11, 2002. The Union alleges it left the mediation session with the understanding that the parties would probably meet with the mediator after the Christmas holidays.
4. The Employer notes that proposals were exchanged through the mediator. The Employer asserts the mediation session had been six-and-one-half hours, and some verbal agreements had been reached. The Employer notes that its dispute settlement procedure allows either party to end the mediation at any time and does not require ultimate impasse. In addition, the Employer alleges its final offer was prompted by its belief that the Union had begun regressive bargaining in bad faith.
5. By letter dated December 27, 2002, the Employer requested a response to its final offer made during the December 11th
mediation session. The Employer notified the Union that if no response is received by January 6, 2003, then implementation of the final offer will be made to the Employer's board.
6. By letter dated January 2, 2003, the Union advised the Employer that it had not been informed that the December 11th
offer was a final offer. The Union requested a second session with the mediator. The Union asserts the parties implemented the mediation process and believed their response should go through the mediator. The Union asserts it is willing to negotiate in the appropriate forum through the mediator.
7. By letter dated January 3, 2003, the Employer advised the Union that the Employer sees no need for additional meetings since its offer is final and the parties are at impasse. The Employer offered to discuss its financial situation, but noted additional explanatory meetings will not change its final offer. The Employer added, "I do not understand your difficulty in responding to a final offer."
8. The Employer asserts the Union did not respond to its January 3rd letter.
9. By letter dated January 15, 2003, the Employer notified the Union of the recommendation to its board to implement the Employer's final offer along with all other provision[s] settled before mediation. The Employer's board approved the recommendation at its January 14, 2003 board meeting.
10. The Union alleges the Employer failed to give the mediation a chance to work. The Union claims the Employer is declaring impasse and implementing its final offer while demanding the Union's response to its final offer.
11. No grievance was filed over the issue of this charge.
 DISCUSSION
The Union alleges the Employer violated RC § 4117.11(A)(1) and (5) by refusing to follow the parties' dispute resolution procedure. The investigation reveals no deviation from the parties contracted dispute resolution procedure. The ap-plicable provisions of the procedure are as follows:
If impasse is declared, the parties will mutually request assistance from the Federal Mediation and Conciliation Service in the form of a Mediator. The Mediator shall act in such capacity until one or both parties decide otherwise, or until agreement is reached. The procedure is in lieu of provisions contained in Section 4117.14 of the Ohio Revised Code.
The parties picked the mediator, and mediation was used until one of the parties decided otherwise. The parties dispute procedure deviates from the Chapter 4117.14 procedure and simply requires a meeting with the mediator. The charge should be dismissed for lack of probable cause.
 RECOMMENDATION
That the Board dismiss the charge with prejudice for lack of probable cause to believe that an unfair labor practice has been committed by the Charged Party.
 {¶ 21} 16. On March 28, 2003, SERB issued an order stating in part as follows:
* * * The charge alleges the Charged Party violated Ohio Revised Code § 4117.11(A)(1) and (5) by refusing to follow the parties' dispute resolution procedure.
Pursuant to Ohio Revised Code § 4117.12, the Board has conducted an investigation of this charge. The investigation reveals no probable cause exists to believe the Charged Party has violated Ohio Revised Code § 4117.11. Information gathered during the investigation reveals the parties' dispute resolution procedure was followed. Accordingly, the charge is dismissed with prejudice.
 Conclusions of Law {¶ 22} The Association contends that SERB abused its discretion in dismissing the unfair labor practice charge based on lack of probable cause. R.C. 4117.11 lists various unfair labor practices, and R.C. 4117.14 sets forth procedures for negotiating an initial or successor collective bargaining agreement. However, under R.C. 4117.14(C), the parties may agree to dispute resolution procedures that supersede the statutory procedures.
 {¶ 23} R.C. 4117.12(B) requires that, when an unfair labor practice charge is filed, SERB "shall investigate the charge," and then, "[i]f the board has probable cause for believing that a violation has occurred, the board shall issue a complaint and shall conduct a hearing concerning the charge." The Ohio Supreme Court has held that SERB abuses its discretion in finding no probable cause when, in fact, "there clearly is probable cause to believe that an unfair labor practice occurred." State ex rel.Serv. Emp. Internatl. Union, Dist. 925 v. State Emp. RelationsBd. (1998), 81 Ohio St.3d 173, 177. However, in evaluating an unfair labor practice charge, the court cannot substitute its judgment for that of SERB, which is a specialized agency to which the General Assembly has assigned these labor questions for determination. E.g., State ex rel. Portage Lakes Edn. Assn.,OEA/NEA v. State Emp. Relations Bd., 95 Ohio St.3d 533,2002-Ohio-2839; Lorain City Bd. of Edn. v. State Emp. RelationsBd. (1988), 40 Ohio St.3d 257, 260.
 {¶ 24} In the present action, the record reveals that the parties agreed to procedures for resolving disputes regarding their collective bargaining agreement, in lieu of the provisions set forth in R.C. 4117.14. Under the agreed procedures, the parties were required, if initial impasse was declared, to "mutually request assistance from the Federal Mediation and Conciliation Service in the form of a Mediator," who would then serve as mediator "until one or both parties decide otherwise, or until agreement is reached."
 {¶ 25} The parties do not dispute that, after initial impasse was reached, the Association and the MRDD mutually requested the assistance of the mediator as required and that they engaged in mediation activities with the mediator's assistance. Further, the evidence shows that mediation continued until one of the parties decided otherwise, which was within the bounds of the agreement. Although the statutory procedures might have given the Association greater rights to continue negotiating, the Association agreed to the alternative procedures in its collective bargaining agreement, and SERB was within its discretion to conclude that MRDD did not violate the agreed bargaining procedures.
 {¶ 26} The Association further asserts, however, that, during the mediation session on December 11, 2002, it was unaware that MRDD considered its offer to be a "final" offer. The Association states that it had expected to resume negotiations after the winter holidays. The Association further contends that, upon learning that MRDD deemed its offer to be a final offer, the Association responded to the offer by requesting another mediation session and that MRDD was obligated to engage in further mediation sessions.
 {¶ 27} However, the agreed procedures did not require MRDD to label its offers in any particular manner, nor did the agreement require MRDD to participate in another mediation session. While the Association may have fully expected further sessions with the mediator, its expectation was not binding on MRDD, as the agreed procedures simply did not oblige MRDD to engage in any further mediation sessions.
 {¶ 28} Accordingly, SERB was not required as a matter of law to find probable cause to believe that MRDD failed to bargain in good faith pursuant to the agreement. In addition, following the cessation of mediation and the expiration of the collective bargaining agreement, MRDD was not precluded by contract or law from voting on and implementing terms of employment, and, therefore, SERB had no legal duty to find probable cause to believe that the MRDD had committed an unfair labor practice in that respect either.
 {¶ 29} For these reasons, the magistrate recommends that the court deny the requested writ of mandamus.