OPINION
{¶ 1} Relator in this action is the Professionals Guild of Ohio ("PGO"), the bargaining representative for Early Intervention Specialist employees of Butler County, Ohio. The respondents are the Ohio State Employment Relations Board ("SERB") and *Page 2 
the Butler County Board of Mental Retardation and Developmental Disabilities ("Butler County"). Relator seeks a writ of mandamus ordering SERB to vacate its prior dismissal of unfair labor practice ("ULP") charges brought by PGO against Butler County based on the county's alleged termination or restriction of past practices governing employee compensatory time, also known as flex time or professional courtesy time.
 {¶ 2} This court referred the matter to a magistrate pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate has issued a decision, which includes findings of fact and conclusions of law and is appended to this opinion. The magistrate recommends that this court deny the requested writ. PGO has filed objections to the magistrate's decision, and the matter is now before the court for our independent review.
 {¶ 3} PGO's memorandum in support of its objections to the magistrate's decision specifies that PGO does not object to some aspects of the magistrate's decision, in particular the magistrate's conclusion that SERB did not fail to adequately investigate PGO's ULP charges. PGO limits its objections to the magistrate's conclusion that PGO is not entitled to a writ compelling SERB to issue a complaint and hold an administrative hearing on the charge.
 {¶ 4} In order to demonstrate that it is entitled to a writ of mandamus, PGO must show that it has a clear legal right to the relief prayed for, that SERB is under a clear legal duty to perform the act requested, and that PGO has no plain and adequate remedy in the ordinary course of the law. State ex rel. Berger v. McMonagle (1983),6 Ohio St.3d 28. In cases such as the present one, in which SERB found there was no *Page 3 
probable cause to proceed with the ULP violation allegations, "mandamus proceedings are premised upon the relators' establishing an abuse of discretion by SERB in its probable-cause determination." State ex rel.Portage Lakes Edn. Assn., OEA/NEA v. State Emp. Relations Bd.,95 Ohio St.3d 533, 2002-Ohio-2839, ¶ 41. A court addressing a petition for mandamus will, therefore, not substitute its judgment for that of the administrative agency (SERB) if there is conflicting evidence on the contested issue. Id. The term "abuse of discretion" connotes more than a mere error of law or judgment, but rather an attitude by a court or administrative tribunal that is unreasonable, arbitrary or unconscionable. Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83,87.
 {¶ 5} Pursuant to R.C. 4117.12(B), SERB may issue a complaint and conduct a hearing on a ULP charge if SERB finds that it has probable cause to believe that a violation occurred. Because the statute does not define the term "probable cause," that definition has been furnished by the Supreme Court of Ohio in Portage Lakes Edn. Assn.: "SERB must issue a complaint and conduct a hearing on an unfair labor practice charge if, following an investigation, it has a reasonable ground to believe that an unfair labor practice has occurred." Id. at ¶ 38.
 {¶ 6} Our review here, therefore, consists of determining whether SERB abused its discretion when it found that it lacked probable cause to proceed with a formal complaint and hearing on the charge, i.e., reasonable grounds to believe that a ULP had occurred.
 {¶ 7} The basis for the ULP assertions in this case relate to the use of professional courtesy time for PGO-represented employees of Butler County. More specifically, while the county continues to permit this class of employees to "flex" time *Page 4 
within a given pay period, the county now prohibits flexing such time from one pay period to another. PGO asserts that, prior to the county's recent change of policy, this practice was formally accepted by the county and routinely practiced by the employees at issue. The county asserts to the contrary that, if carrying flex time from pay period to pay period was tolerated in the past, this was an informal practice by certain section managers and contrary to widespread and defined county policy. Because the detailed collective bargaining agreement between PGO and Butler County is silent on this question, SERB was left to consult less definitive evidence.
 {¶ 8} The ULP brought by PGO asserts that Butler County's abolition of flex time between pay periods constitutes a unilateral change of a binding past practice, when in fact such past practices may only be altered or adapted by the employer under a formal bargaining procedure. "A past practice is a custom or practice evolved as a normal reaction to a recurring situation; it must be shown to be the accepted course of conduct characteristically repeated in response to the given set of underlying circumstances." Defiance City School Dist. Bd. of Edn. (Nov. 21, 1997), SERB Order 97-016. "To be binding on parties to a collective bargaining agreement, a past practice must be (1) unequivocal, (2) clearly enunciated, and (3) followed for a reasonable period of time as a fixed and established practice accepted by both parties." Assn. ofCleveland Fire Fighters, Local 93 of the Internatl. Assn. of FireFighters v. Cleveland, 99 Ohio St.3d 476, 2003-Ohio-4278, syllabus.
 {¶ 9} Applying the above standard, the evidence before this court, both that gathered by SERB and that produced as a supplement before the magistrate, is at best equivocal on the question of whether the asserted past practice on employee use of flex *Page 5 
time constituted a fixed and established practice accepted by both parties. To be sure, PGO presented evidence suggesting that some employees banked flex time hours and that a policy allowed them to do so at one time. For example, PGO presented two pages apparently removed from a larger writing and identified in a handwritten marginal note as taken from an "Early Childhood handbook." The discussion contained on those pages describes professional courtesy time and states that such time "can be accrued and used only during the `center based' program calendar year. Anything left at the end of this time will be lost." While that statement suggests that employees could bank flex time, these pages, standing alone, do not establish the time frame during which the described policy was in effect or to whom it applied.
 {¶ 10} With its motion for reconsideration, PGO also submitted the affidavit of Suzanne Krebs. The affidavit describes a long-standing policy of allowing employees to bank flex time across pay periods. The county objected to any use of the affidavit as evidence, but even this evidence does not establish an unequivocal or clearly enunciated past practice. The affidavit states that a 1999 policy required the use of flex time within a pay period, but that the policy "was never enforced." Also attached to the motion is one page of a document, apparently a handbook, that states expressly: "Time accrued must be used within thepay period (2 weeks) unless special prior approval has beengranted." (Emphasis sic.)
 {¶ 11} In addition to these documents, the county and PGO presented other evidence concerning the use of flex time — the county's evidence suggesting that it recently learned that some employees were not following existing policy, which did not allow employees to bank flex time, and PGO's evidence suggesting that existing policy *Page 6 
allowed employees to do so. This confusing and conflicting evidence is different from the evidence at issue in State ex rel. Serv. Emp.Internatl. Union, Dist. 925 v. State Emp. Relations Bd.,81 Ohio St.3d 173, 182, 1998-Ohio-463, where the SERB investigator had found probable cause for believing that a ULP had been committed, the documentary evidence included relevant studies, memoranda, and a sworn deposition by the charged party's general counsel, and the Supreme Court of Ohio characterized SERB's reasons for rejecting the probable cause finding as "amorphous, undetermined policy reasons."
 {¶ 12} As we stated at the outset, the question before us is not whether we disagree with SERB's determination that probable cause did not exist, but whether SERB abused its discretion in so concluding. Given the conflicting evidence before it, we find that it did not. Accordingly, after an independent review of the matter, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. The requested writ of mandamus is denied.
Objections overruled writ of mandamus denied.
 BRYANT and KLATT, JJ., concur. *Page 7 APPENDIX MAGISTRATE'S DECISION {¶ 13} Relator, Professionals Guild of Ohio ("PGO"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent State Employment Relations Board ("SERB") to vacate its dismissals of unfair labor practice charges 07-ULP-08-0393 and 07-ULP-08-0394 against respondent Butler County Board *Page 8 
of Mental Retardation and Developmental Disabilities ("Butler County"), and ordering SERB to find that there is probable cause to believe that Butler County committed the alleged unfair labor practices, issue complaints on those charges, and set the cases for hearing.
Findings of Fact: {¶ 14} 1. PGO has been the exclusive bargaining representative of all full-time and regular part-time Early Intervention Specialists ("EIS") employees of Butler County since 2004.
 {¶ 15} 2. On August 6, 2007, PGO filed two unfair labor practice ("ULP") charges against Butler County. PGO alleged that Butler County had unilaterally changed a past practice of "banking" compensatory time (also referred to as flextime and professional courtesy time) earned in one pay period and used in another. PGO alleged that the change had to be bargained over and, since Butler County had refused to bargain over the change, Butler County had committed a ULP based upon R.C. 4117.11(A)(1) and (5). PGO also alleged that, during a staff meeting on June 15, 2007, a Butler County supervisor informed the EIS employees that they would no longer be able to "bank" compensatory time because they had a union. PGO alleged that this was a violation of R.C. 4117.11(A)(1) and (3).
 {¶ 16} 3. As part of its investigation, SERB issued initial investigation letters requesting information to both PGO and Butler County. SERB requested not only specific information regarding the bargaining unit but, also, requested that each party provide a response to the charges. Further, both PGO and Butler County were instructed to provide any witness statements which supported their respective positions. *Page 9 
 {¶ 17} 4. Both PGO and Butler County timely provided responses to SERB's request for information. Both PGO and Butler County agreed there was a collective bargaining agreement ("CBA") in effect at the time at issue and that the CBA was silent on the issue of "banking" compensatory time/flextime/professional courtesy time. Further, both acknowledged that, during contract negotiations, PGO had made a proposal regarding flextime; however, the parties were unable to reach an agreement.
 {¶ 18} 5. PGO submitted documents including what appear to be pages from a handbook addressing the issue of professional courtesy time; however, although there are handwritten dates at the top of these two pages, it is not clear when this was part of any handbook. Further, nothing in the handbook states that banked compensatory time earned in one pay period can be used in another pay period. Instead, there is a reference to the fact that time accrued may be used only during the "center-based" program calendar year. PGO also indicated that a bargaining unit employee, Susanne Krebs, could confirm that professional courtesy time had been treated like compensatory time and could be banked by bargaining unit members. Further, PGO documented that Butler County informed PGO that it was terminating the use of professional courtesy time outside the pay period when it was accrued and that bargaining unit members could either be paid for any banked time or exhaust such time on June 1, 2007.
 {¶ 19} 6. In its response, Butler County indicated that professional staff had always been permitted to flex time within a pay period, although this practice was not in writing, but it was never intended that flextime be used after the pay period in question. Butler County indicated that its human resource department became aware that some *Page 10 
employees were using banked flextime outside the pay period in which it was earned in the Spring 2007 and that it informed all its employees (not just employees represented by the PGO union) that the practice was to end. The record also contains documents indicating that PGO sought a similar flextime policy in 2005; however, PGO and Butler County were not able to reach an agreement. Butler County also provided an affidavit from Mary May attesting that she did not make any inappropriate statements indicating that the union members were being discriminated against because they were in a union, but, that, she indicated the policy was being applied across the board to all employees.
 {¶ 20} 7. Both PGO and Butler County met in an attempt to resolve the matter; however, the parties were unable to reach an agreement.
 {¶ 21} 8. On November 8, 2007, SERB dismissed the charges based upon a finding that PGO had failed to provide sufficient information to support a finding of probable cause to believe that ULPs had been committed by Butler County. The dismissal provides in pertinent part:
 * * * The investigation revealed no probable cause existed to believe [Butler County] violated Ohio Revised Code § 4117.11. Information gathered during the investigation revealed the parties' contract is silent on the issue of "banking time." [PGO] failed to provide sufficient information to show the alleged "past practice" had been sanctioned by [Butler County]. It appeared [Butler County] had a right to "correct a possible violation" of the Fair Labor Standards Act under the Management Rights article contained in the contract. The "flex time" process was not eliminated for the employees because they can still accrue "flex, compensatory, or professional courtesy time," but it must be used within the same pay period and not "banked" for future use. The employees who had "banked" time were offered a lump-sum payment or the opportunity to use the time. The "correction" affected all salaried employees, not just bargaining-unit members. The alleged comments made by Mary May did not rise to the level of a violation. [PGO] failed *Page 11 
to provide sufficient information to support the Ohio Revised Code § 4117.11(A)(3) allegation. Accordingly, the charges are dismissed with prejudice.
 {¶ 22} 9. On January 18, 2008, PGO filed a motion asking SERB to reconsider its dismissal of the charges. PGO included a letter signed by Krebs describing her experience with the use of compensatory time/flextime/professional courtesy time. Specifically, Krebs indicated:
 * * * To my knowledge there has never been a limit to the amount of Professional Courtesy Time that could be accrued. I know there have been times when Early Intervention Specialists have taken 2-3 days or more of Professional Courtesy Time. I have taken single days of Professional Courtesy Time. * * * At any given time an Early Intervention Specialist would have between 14 and 25 hours on average accrued.
 * * *
 In 1999 we received a memo regarding Flex Time and what the parameters on accrual would be. According to the attachment, it was to be used within the pay period, but to my knowledge that was never enforced. Once it was revised and renamed to Professional Courtesy Time the only parameter to use was supervisory approval was needed for any amount used over 4 hours. * * * Until July of 2007, I am not aware of anyone being required to use it within the pay period. * * *
 {¶ 23} 10. In response, Butler County reiterated that even if there had been a past practice with regard to the use of compensatory time, it was not binding and it failed to consider that any past practice which may have existed was terminated following negotiations between PGO and Butler County in 2005. Butler County attached a portion of PGO's proposal from February 2005 indicating that PGO sought a provision that would have permitted an employee to utilize any hours worked in excess of an employee's normal workweek as flextime at any time chosen by the employee. *Page 12 
Butler County indicated that PGO was trying to obtain a benefit through the ULP process which it had not been able to obtain during contract negotiations. Further, Butler County stated that even if a few supervisors had incorrectly applied the rule in the past without the knowledge of the central office, such action did not establish a binding past practice. Lastly, Butler County again reiterated that the banking of compensatory time is generally inconsistent with the concept of being a salaried employee and that Butler County was permitted to correct what may have been a violation under the Fair Labor Standards Act.
 {¶ 24} 11. On March 6, 2008, SERB denied PGO's motion for reconsideration.
 {¶ 25} 12. Thereafter, PGO filed the instant mandamus action in this court asserting that SERB abused its discretion by failing to find that probable cause existed to believe that Butler County violated R.C. 4117.11. PGO also asserts that SERB did not perform its duty to investigate the ULP charges in question because the SERB investigators did not personally contact any of the witnesses PGO listed in its response to the information requests.
 {¶ 26} 13. The matter is currently before the magistrate for consideration.
Conclusions of Law: {¶ 27} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28. *Page 13 
 {¶ 28} PGO asserts that SERB erred in dismissing its ULP charges and that they are entitled to a writ of mandamus to compel SERB to issue complaints and conduct hearings on their charges. For the reasons that follow, this magistrate disagrees.
 {¶ 29} R.C. 4117.12(B) requires SERB to issue a complaint and conduct a hearing on a ULP charge if it has probable cause for believing that a violation has occurred: "When anyone files a charge with the board alleging that an unfair labor practice has been committed, the board or its designated agent shall investigate the charge. If the board has probable cause for believing that a violation has occurred, the board shall issue a complaint and shall conduct a hearing concerning the charge."
 {¶ 30} Probable-cause determinations by SERB under R.C. 4117.12(B) are not reviewable by direct appeal. Ohio Assn. of Pub. School Emp.,Chapter 643, AFSCME, AFL-CIO v. Dayton City School Dist. Bd. of Edn. (1991),59 Ohio St.3d 159. Instead, a mandamus action is the appropriate remedy to obtain judicial review of orders by SERB and dismissing ULP charges for lack of probable cause. State ex rel. Serv. Emp. Internatl. Union,Dist. 925 v. State Emp. Relations Bd. (1998), 81 Ohio St.3d 173; State ex rel.Glass, Molders, Pottery, Plastics Allied Workers Internatl. Union,Local 333, AFL-CIO, CLC v. State Emp. Relations Bd. (1993),66 Ohio St.3d 157, 159. A writ of mandamus will issue to correct an abuse of discretion by SERB in dismissing ULP charges. State ex rel. Leigh v.State Emp. Relations Bd. (1996), 76 Ohio St.3d 143, 145. An abuse of discretion means an unreasonable, arbitrary, or unconscionable decision.State ex rel. Elsass v. Shelby Cty. Bd. of Commrs. (2001),92 Ohio St.3d 529, 533. *Page 14 
 {¶ 31} In State ex rel. Portage Lakes Edn. Assn., OEA/NEA v. StateEmp. Relations Bd., 95 Ohio St.3d 533, 2002-Ohio-2839, the Supreme Court of Ohio noted that the term "probable cause" is not defined in R.C. Chapter 4117. Ultimately, the court held that "SERB must issue a complaint and conduct a hearing on an unfair labor practice charge if, following an investigation, it has a reasonable ground to believe that an unfair labor practice has occurred." Id. at ¶ 38.
 {¶ 32} In explaining SERB's role, the court in Portage Lakes noted that the issue of probable cause is essentially one of fact. As such, SERB considers not only the evidence supporting the allegations of the charge, but, also, any information that may rebut the charge or offer a defense to the violation alleged. "Issues such as managerial justification, the absence of protected activity by a charging party, or the failure to show any indication of unlawful motivation may be sufficient to secure dismissal of a case even when the facts alleged in the charge have been verified." Id. at ¶ 40.
 {¶ 33} After reviewing the record in this case, the magistrate concludes that SERB did not abuse its discretion in dismissing PGO's ULP charges. SERB's investigation revealed that the CBA between PGO and Butler County was silent on the issue of "banking" time. Neither PGO nor Butler County challenge this finding. SERB found that PGO failed to provide sufficient information showing that the alleged past practice had been sanctioned by Butler County and, also, that Butler County had a right to correct a possible violation of the Fair Labor Standards Act under the management rights provision of the CBA. Further, SERB specifically found that flextime had not been eliminated for any of the employees. Instead, employees could still accrue compensatory time/flextime/professional courtesy time but it had to be used within the *Page 15 
same pay period. Further, all employees who had accumulated "banked" time were offered either a lump-sum payment or the opportunity to use that time. PGO has not shown that SERB abused its discretion in this regard.
 {¶ 34} Further, with regards to the statements allegedly made by Mary May, there was some evidence from PGO that the statements were made and some evidence from Butler County that Ms. May did not make the statements. Again, probable cause determinations are essentially questions of fact and the magistrate cannot say that SERB abused its discretion in dismissing this charge as well.
 {¶ 35} PGO also argues that SERB abused its discretion by denying its motion for reconsideration. The magistrate disagrees. The information PGO submitted with its motion could have been submitted during the investigatory phase and does not meet the definition of "new" and formerly "unavailable." It was not an abuse of discretion for SERB to conclude that this additional evidence did not warrant a reversal of its prior finding that PGO failed to meet its burden.
 {¶ 36} As a final matter, PGO asserts that SERB did not fulfill its obligation to investigate. Specifically, PGO argues that, in other cases, SERB investigators have actually spoken with witnesses and obtained statements from them. Because the SERB investigators did not actually contact PGO's proffered witnesses in its investigation, PGO contends that SERB failed to fulfill its obligation under the law to investigate the ULP charges. This magistrate disagrees.
 {¶ 37} Nothing in the statutory framework prescribes a specific method whereby SERB is required to investigate ULP charges. The fact that SERB investigators actually contact witnesses in one situation and do not find it necessary to contact witnesses in *Page 16 
another situation does not lead to the conclusion that SERB failed to properly investigate PGO's ULP charges in the instant case and PGO is unable to direct this court's attention to any case law holding to the contrary. As such, the magistrate finds that PGO has failed to show that SERB failed to properly investigate PGO's ULP charges.
 {¶ 38} Based on the foregoing, it is this magistrate's conclusion that PGO has not established that SERB abused its discretion in dismissing the ULP charges PGO brought against Butler County and PGO has not shown that SERB failed to properly investigate the charges and this court should deny relator's request for a writ of mandamus. *Page 1